25-5348 Vera Institute of Justice et al. v. United States Department of Justice et al. Ms. Newman of Brady and Balance, Mr. Springer of Brady, I believe. Good morning, Council. Ms. Newman, please proceed when you're ready. Good morning. The Office of Justice Programs adopted a novel and expansive interpretation of a regulatory provision that cabins OJP's authority to terminate existing grants. OJP invoked that newly claimed authority in terminating more than $800 million in federal grant funding. OJP's departure from its longstanding interpretation of its termination authority is inconsistent with the text and history of that regulation, and it effectively turns a regulation intended to limit the circumstances in which a grant can be terminated into a provision that would allow any agency to terminate grants unilaterally for any reason at all. That is what happened here and why the District Court described the terminations as being unquestionably arbitrary. Plaintiffs invoked the APA in challenging the lawfulness of OJP's adoption of that novel policy to terminate grants based on changed agency priorities and in challenging OJP's arbitrary exercise of that newly claimed authority when it terminated nearly 400 grants. The APA, not any principle or provision of the grant agreement or provision of contract law, governs this type of governmental policymaking. Can I just ask you at the outset, there's the Climate United decision that, of course, everybody is familiar with, and we can have a debate about whether that governs here and but if we just bracket that for a second, let's just assume for argument purposes that it is, then would there be anything left of your claim under that authority or would you be saying that decision is wrong and you'd have an opportunity to seek further review of that? So I certainly think that we still have claims to make, even with Climate United. So our first law claim, which is our primary claim, is that the OJP's interpretation of 200.340 is unlawful and that claim exists regardless of Climate United. That is a classic APA claim about an agency's interpretation of its regulation and that was not at issue in Climate United. Our second contrary to law claim does... Was there not a... I thought there was a 200.340. It's the same reg. There's two. It's the same reg. Same reg, but the argument that they made was similar to our second contrary to law claim, which is a question about whether or not that was properly incorporated into the grant agreement under section 200.340B. And so, you know, that claim is similar to our second contrary to law claim, but they did not make an argument like we made in our first contrary to law claim, which is that section 200.340 does not allow for an agency to terminate grants based on a change in agency priorities, and that exists regardless of Climate United. Oh, I see. In other words, the argument you're making under 200.340A4 is that that statute... Not statute. Regulation. Your regulation should only be understood to cover whatever the priorities were at the time. You can't take into account a change in priorities. Okay, so that's tricky under the text. It's not... I mean, you've got some textual questions that would arise with respect to that, but if not for that particular argument, then you think the rest of the case would be governed by Climate United if Climate United did govern. Uh, not completely. So we've argued here that these are not contracts under the Tucker Act, which is something that the plaintiffs in Climate United did not dispute, and we have our arbitrary and capricious claim about the termination of the grants, but we think the claim that most clearly stands separate and apart from Climate United and would not be governed by Climate United is the change in agency priorities. On the argument that these are not contracts to begin with, that would have meant that a lot of the stuff that's happened in the last few months, it just happened for no reason, because, including at the Supreme Court, because those cases could have been resolved on the antecedent argument that you're presenting that grants aren't contracts to begin with. Is that... Yes, there... That's the implication, at least. Whether it's right or wrong, that's the implication. Right. That is the implication of it. But of course, the court did not reach that. Um, it was briefed. They decided not to issue any reasoning and did not rule squarely on that issue, so we believe that is certainly still an argument that is open, um, even after NIH. They didn't... The court didn't explicitly say anything about it, but they suggested that jurisdiction was appropriate in the Court of Federal Claims, which means that grants are contracts. If they... There was any indication that they thought grants were not contracts, then their conclusion would make no sense. Well, I'll start with the fact that they didn't issue any opinion on that subject, and so that certainly still is a live claim, but understanding that is an antecedent question to the second. It could have been that in NIH, there were royalties and licensing that were involved with the research grants. It was an argument that the parties made in the briefs, but, you know, we don't know where the Supreme Court has landed on that because they haven't said anything about that. What about longstanding? I mean, even putting aside the Supreme Court's stay orders, which I'm not sure that we can do, um, I mean, our court has long treated these types of things as grants as contracts. Is there a specific case that you're referring to? I mean, just our whole... I mean, all of our Tucker Act cases, you know, I mean, I guess I'm not sure where the argument would come from that a grant that is in the form of a Can you point to any case suggesting a grant is not a contract? There are a few federal claims, uh, cases that have said that cooperative agreements are not contracts in the Tucker Act. I believe Looney, uh, the 2017 Federal Circuit is one such case, um, but it is a sort of individualized and specific analysis, and I think part of... so this court hasn't considered prior to this current spat of litigation, um, cooperative agreements and grants of these types, which look very different than procurement contracts that were at issue, for example, in Spectrum and Ingersoll-Rand, um, and so I do think when you're looking at whether or not there is adequate consideration on behalf of the government, um, the cases that the Federal Circuit has held do, um, do mean that there is consideration is where the grantee or cooperative agreement, um, organization was providing a specific and direct benefit for the government, which we simply do not have here. We have organizations who are providing public services, um, to the public, and that is the whole purpose under the statute of a cooperative agreement. Direct benefit tests would have, I think, massive implications for government contracting. I mean, in this situation, Congress has determined what the benefit of the grant is, right? They have provided money for these programs, and so a suggestion that there has to be some additional direct benefit to the government, where would we find such a requirement? I think that just gets at the difference between procurement contracts, which are specifically for a, for the benefit of the government under the statutory scheme, and cooperative agreements and grant agreements, which are for a, you know, a public benefit of many different sorts. So, procurement contracts would be the only type of thing that's a contract for Tucker Act purposes under your understanding? I think they're most, they're most clearly a contract for Tucker Act purposes, um, and under the Federal Circuit's test, it is then, you know, is there adequate consideration? Is there offer? Is there acceptance? And part of what the Federal Circuit has taken into account in the past is, is there a direct benefit that this grantee is providing on behalf of the government? I think that's simply a, a product of the different types of services that are being provided here, and in particular, whether or not there are remedies that are to grantees like the plaintiffs here, which is part of the megapulse test. What is the relief that is sought, and what is the relief that is appropriate? And here, we believe even after, you mentioned the Supreme Court's orders, even after NIH and Department of California, um, we believe that actually the NIH order leaves open the very type of APA claim that we're bringing in our first contrary to law claim, which is simply a question of whether or not an agency's interpretation of its regulation is lawful and consistent with the text of the regulation, the history of the regulation, et cetera. You don't quarrel with the Federal Circuit's test for when a grant is a contract. No, we do not. So, it just comes down to an assessment of whether the benefit the government receives from your client's counts as consideration. Correct. Yes. Sorry. Um, I guess I have a question about whether the regulations that are cited here even create judicially enforceable rights because they are a kind of guidance document about how these things, I mean, how do you read the regulations to create a judicially enforceable right? So, DOJ adopted the uniform guidance in 2 CFR 2800.100, I think. So, DOJ has adopted the uniform guidance subject to a couple of modifications not relevant here as binding on the agency. So, you know, we're not challenging, the reason why OMB is not a defendant is because we're not challenging, you know, the facial nature of those regulations. It's how those regulations have been applied here. And they certainly are enforceable once DOJ chose to adopt those regulations as binding on the agency. You describe the regulation as limiting legal limits on what the government can do regardless of the terms of any contract. And I just, I'm not sure that's right because when you read the regulation as a whole, you're focused on A4, but A4 follows, for instance, A1, which says the government can terminate a contract for failure to comply with the terms, which means the government can put in the contract any termination terms it wants. And then on top of that is this A4, which is this sort of super unusual government-specific termination thing, which gives them an extra power that you wouldn't expect to see in private contracts. So, it doesn't seem like it's limiting. It seems like it's expanding. So, I don't think that it's necessarily a question of whether it's limiting or expanding. I think it is whether or not, so the regulations impose specific situations in which an agency is allowed to terminate a contract. One of them is pursuant to the terms and conditions of the contract. And another is subsection A4, which is a failure to effectuate program goals or agency priorities. And I certainly do think that does place a substantive limit on an agency's ability to terminate a grant agreement. And what OMB made clear when it issued its final rule was that an agency could add that as a term and condition to a contract, but it didn't have to. And as we've seen from litigation that has arisen in this space, I think the EPA is actually the only agency that included as a specific term and condition in the grant agreement the specific language in subsection A4. DOJ did not do so. And it is not entitled to rely on that as a basis for termination when it did not include the language in the grant agreement. And I think part of what OMB made clear when it added this language to the final rule in 2020 and then again in 2024, it made clear in response to concerns about grants being terminated arbitrarily that it would not allow grants to be terminated arbitrarily. And it also, the specific examples given, contemplated that an agency would be relying on specific evidence that a specific award no longer met program goals or agency priorities. And I think that just indicates that the sort of mass terminations that we've challenged here is not, you know, even if that had been included as a term and condition, would not be the sort of specific termination that the regs give OJP the authority to do. So, even if it's possible to state some of these claims as a matter of, you know, violating regulations, I mean, the longstanding test in our circuit is that the claims have to be purely, they have to be entirely independent of the contract. And so, even if the regulation is implicated here, at the end of the day, the parties here arguably are relying on contractual rights. I mean, what is the best argument that the regulatory claims that you're putting forth are truly independent, which is our longstanding test? I will push back a little bit on the truly independent. I think there were several cases, Crowley included, that said, you know, principle number one, even if it arises with the backdrop of a contractual relationship, and I believe the language of Crowley is, quote, they would have no claims to assert, end quote, absent a contract, that doesn't mean that the right and the claims that plaintiffs are bringing arises out of the contract. So, I think you can have a contract and disputes that arise out of a dispute over the terms of the contract, and you can have truly independent claims that do not arise out of the contract, but arise out of other statutes or regulations, as is the case here, that place substantive limitations on an agency's authority to act. And, you know, our first contrarial law claim, you do not have to look at the grant agreement at all. It is completely independent and a question about the lawfulness of the agency's determination. That the plaintiffs here have arises out of the fact that they have a grant agreement. But this court has squarely rejected in Megapulse and in Crowley that that is the test. All of those cases arose in the backdrop of contractual relationships. Megapulse involved limitations that the government placed on the, that regulations placed on the government's dissemination of data. That claim wouldn't have existed if the test was, there is a contractual right here, and because you have a contract with the government, then that means you have to be channeled over to the Tucker Act. And so I think, again, the way that I think about it, and the D.C. Circuit's test in Megapulse is, is a statute or regulation the thing that is imposing the duty on the government? And is it the grant agreement that is, so is it a regulation that imposes a duty or places a limitation on the government? Or is it a duty or a limitation that arises out of the grant agreement? And the second prong of Megapulse, is the relief that plaintiffs are seeking something that arises similarly out of the grant agreement? Or is it something that is consistent with the APA and declaratory and injunctive relief of the sort that we saw here? The cases are very clear that simply by a plaintiff preferring to get injunctive relief doesn't get you out of the Tucker Act. The whole purpose of the Tucker Act is to channel those claims to the court, channel such claims to the Court of Federal Claims where injunctive relief is not available.  And merely wanting injunctive relief doesn't avoid Tucker Act jurisdiction. Absolutely. And I think under Megapulse, I don't think under Megapulse, the question is, is this so clearly a contract claim that it should go to the Court of Federal Claims? Or is it something that plaintiffs are creatively trying to draft around to get out of the Tucker Act land? And I think district courts are very well suited to make those types of determinations. They make them every single day about whether or not there's particularity pled as to fraud, whether or not somebody is trying to get around the strictures of a jurisdictional act. And so I think we have to be careful about not making it such that it is, is there under any conception at all that I can possibly come up with that this might be, that this might be creatively pled as a contractual claim? Or is it something that is, you know, independent of and similar to the sort of EPA claims that district courts adjudicate every single day? Here's why I'm a little skeptical on independence, which is you're right. There are different fact patterns and the verbal formulations are in tension. And sometimes we say truly, and sometimes we don't. But here's what this case is about, right? It's a reg that is basically a template for contracts. It says, here are some termination provisions. You can put in a contract and it says, whatever you want the termination provisions to be, put them in the contract, right? So any claim for violation of this reg is going to have, it's going to turn on, you know, turns on your interpretation of A4, but that's been, there's a contract term that uses exactly the same words as A4 and you're construing that contract every bit as much as you're construing this reg. So I understand. It just seems highly artificial to separate them out. I understand that sort of slippery slope concern that you're getting at. And I think when you have a claim that's somebody bringing an individual breach of contract claim, challenging the rationale behind a termination, that is much harder, a much harder case and looks very different than I think the one that we have here, where we have an agency that has changed, adopted a novel interpretation of this regulation, and then applied that 376 times in the exact same manner. And so I think you have a different question. I understand the sort of artificial limitations. But when you have claims of the sort that we have brought here, which is a normal, like, challenge to agency interpretation of a regulation that this court adjudicates every single day, that looks different than the individual claim who might be, the individual grantee, whomever it is, who might be challenging the reasons behind the termination decision, which was Ingersoll-Rand. Would your answer on jurisdiction be any different if OJP had just terminated one contract on this rationale to create a test case and then just held off on the others? I think that would look very different than our case. And I think that would be a much harder argument for me to stand up here and— Same dynamic. Your argument is all about, you say it's all about what 2 CFR 200-340-A4 means. They say it's all about what the incorporated contract term means. I think that's a much harder case than this one, where you have the relief that we're seeking being specific to a declaration of the unlawfulness of an agency's interpretation that is clearly adopted as its own policy. We've pled that that is a policy that the agency adopted, and we have sought declaratory and injunctive relief relative to that interpretation that has, under Kidwell, important independent value here because many of our grantees are repeat players in front of OJP. VERA has had grants for 50 years and has been a federal grantee for 50 years in front of OJP. HRIA has 10 grants with 10 different federal agencies. And CCYJ is right now about to submit an application for funding with OJP. And so these plaintiffs, too, have an interest in understanding and obtaining declaratory relief related to what the proper interpretation of that regulation is. I'm not quite sure I follow the analytical distinction between a claim by one contractor and a one contractor situation in a claim that's in response to what happened here. If the gravamen of the claim is a violation of this regulation, because it's still the regulation is doing the same work. It's just doing the same work a lot of times instead of once. And so if we go down to the one, if we just take a strip away that the seriatim one, because you could, the agency could have done it by just doing it 340 times in a row instead of one fell swoop, and I think we'd be in basically the same place. Then if we just look at the one, then it does seem like there's the dynamic that the claim that is made under the regulation is the very same claim that could be made under the contract. Well, I don't think, is that assuming that that was actually incorporated into the contract in the way that the regulation required or the situation we have here, but just with one grantee? Well, I think you could make the same argument no matter what. I think if it was a single contract and you were in the court of claims, is there anything that you're arguing now that you couldn't argue there as a basis for saying the termination is invalid? Well, it would be a breach of contract claim, and I don't know that you actually could get to the relief that we are seeking, which is a declaratory and injunctive relief regarding the government's interpretation of that. So the court of federal- Any interpretive question. Could you get that relief? Not the relief, but could you get any relief on the same ground that you're asserting now, which is that, hey, you terminated my contract. I'm looking at these regulations that are also in the contract. Can't do it on these basis. It's just not allowed. It's not a valid. Now, I'll bracket your point about exactly what the relief would be that ensues from that. But I'm just trying to get to the claim that would be made, the violation that would be asserted. You could make the same, you could still argue. I'm not saying that this would end the case for you, but because you could still have some other arguments. But for these purposes, it seems like you could allege the same wrongness in the court of claims as you allege now. Now, you could say, well, look, even if that's true, we still have the regulatory one, and it doesn't matter that they're overlapping. It doesn't matter enough that they're overlapping that you could bring it in both places. We're choosing to style our one against the regulation rather than against the contract. You could say the relief is different, but I'm just trying to get at the wrong, the legal error, the unlawfulness or breach would come from the same place. Yes, that's correct. And I think part of why that arises in quick cases in the court of federal claims is damages are sufficient to remedy the harm, which I understand you're bracketing the relief. And the damages that are available in the court of federal claims would be sufficient to remedy that violation of the regulation. So can I ask you this? Suppose that B, instead of saying must clearly and unambiguously specify, suppose it just says something like whether the grant arrangement has been complied with will turn on basic principles of contract law. And then could you say, well, I'm bringing a regulatory claim that that regulation has been violated. Because the agency didn't rely on principles of contract law or instead of clearly unambiguously, there's that language doesn't exist in? Yeah, I guess what I'm getting at, forget the hypo because I think it doesn't work. Scratch that. So I guess what I'm getting at is it just seems to me that clearly and unambiguously is just a thing that we do when we interpret contracts. It's a canon of construct. You can use it. There's all kinds of contract doctrines that could be placed in regulation. And I don't know that what we would say is because we're asserting there's a violation of this thing that's in the regulation, which is just the way we interpret contracts, then it becomes a regulatory claim as opposed to a contractual claim that would go to the court of claims. I think it still would have to be a regulatory claim. And the question here is whether or not that was included in the grant agreement itself. We're not talking about clear and unambiguous. It is, is this language included within the grant agreement or is it not? And that's not the sort of thing that would require or even call upon the Court of Federal Claims expertise in trying to determine whether or not principles of contract law apply or otherwise. I don't know if that answered your question. Yeah, no, I think it did. I'm going to make sure my colleagues don't have additional questions. We'll give you some time for rebuttal. Thank you. Mr. Springer. Good morning, Your Honors. Excuse me. I may have pleased the Court. Brian Springer on behalf of the federal government. I'd like to pick up where I think some of the discussion is focused today, that binding precedent from this court and recent state rulings from the Supreme Court dictate that plaintiffs' grant termination claims fall within the Tucker Act and belong in the Court of Federal Claims, that any asserted substantive right to the payment of federal funds by the plaintiffs is created in the first instance by the grant agreements, not by some other source of law. Now, when you say binding precedent, are you referring to Climate United? Your Honor, I think Climate United is one example. I mean, I think this result also follows from this Court's decisions in Spectrum and in Ingersoll-Rand. I think those cases address similar circumstances to what we have in this case. But I guess I'm asking the question, do you think Climate United is binding in this case? Your Honor, I do think Climate United is binding on this panel. And obviously, there's other people on the panel who have expertise in Climate United. But I guess my question is, it came up in the context of a likelihood threshold. Now, it may or may not be totally persuasive in the way it conducted the analysis. And there's, of course, you can find language in the opinion that you could say, well, that's not really just a likelihood statement. That seems like a pretty certain statement. I get that. And I think you get that a lot of times. But if it comes up actually in a likelihood context, and it doesn't profess to do more than that in any particular place, I'm not sure why it's actually binding. And you may be familiar with it. We've had a line of cases where you can take something that comes up in that context, and the Court can just affirmatively say, by the way, this is just a legal proposition. Yes, it comes up in the likelihood context. It's a PI context. But because there'd be no point for the district court to go through something else, we're just going to go ahead and ripen this into a definitive conclusion at the end of the day, too. There's decisions that have done that. But this time, United didn't do that. So on the just a narrow question of whether it's, in fact, binding, as opposed to as persuasive as it might well be or not be, depending on your perspective, why is it binding? I think it's binding to the extent of what the Court says in that case. I do think there are parts where the Court is sort of talking in legal terms and making determinations about law. But even if this Court didn't think that Climate United was binding, again, this result follows directly from the recent Supreme Court stay rulings, as well as this Court's previous cases in Spectrum and Ingersoll-Rand, among others. And so I think even if you were to think that there was some reason to treat Climate United as not binding or as presenting a different circumstance, the same result would follow in this case. And suppose I think it's binding or persuasive on the specific points, which are the arbitrary and capricious point and the contrary to law point based on the express incorporation. Are there respects in which you think this case is stronger than Climate United? Because Climate United is still pending in bank, and I don't know what we're going to do. But we could just say Climate United is persuasive on those points, period, full stop. Or we could say your case is stronger. Gianna, I mean, I think even if this Court were to sort of set Climate United aside, the result should still be what the District Court reached in this case because of this Court's prior precedent. I mean, again, I think... Same reasons articulated in Climate United were... I mean, I think for the same basic reasons as were given in Climate United. I mean, again, this case looks identical to the Supreme Court's, you know, recent stay rulings, both in NIH, you know, the part that was about the grant terminations, as well as the Supreme Court's decision in California. And I think that plaintiffs, you know, attempts to distinguish this Court's previous decisions and Ingersoll-Rand, which had, you know, an aspect to it about regulations and about the violation of regulations, and also to distinguish spectrum, you know, adult... You got a lot of data points cutting in your favor, but those are stay opinions too. I mean, one could say those aren't binding either. You know, I mean, that isn't true, obviously, of Ingersoll-Rand and spectrum Court's decisions. Right. I mean, obviously, that's true of the Supreme Court's decision. I mean, again, I think the fundamental question that's being asked in these cases is the one of what is the substantive source of the right to payments. And here, that is the grant agreements. I think that follows from Megapulse, that follows from Spectrum, that follows from Ingersoll-Rand. You know, I think that's the way that all of these cases... A template that's incorporated into the contract. Your Honor, right here, where exactly, that in the contract, it says that this reg applies, and the government invoked it as a basis to terminate these contracts, and plaintiffs here are challenging, you know, the invocation of that reg in this circumstance. Ingersoll, I'm happy to answer any questions.  Okay. Thanks. Thank you. Steman, we'll give you three minutes for rebuttal. Thank you. I'll be brief. So, I understand the government just be saying that these claims are identical to the ones that were raised in the NIH decision, and therefore, our claims also fail. If that is true, then under NIH, still presently, the court allowed APA claims to proceed forward similar to the ones that we have made, which is a question about, you know, it's an arbitrary and capricious claim, but here, whether or not an agency has properly interpreted its regulation as a classic APA claim, that is allowed to proceed forward under the NIH decision presently. And I think, you know, one response to your earlier question about principles of contract law, the regulation imposes principles and limitations on the government's behavior that are in addition to and supersede contract law. There are additional limitations that are placed on the government when it is engaged in agreements regarding federal funding. And so, you know, those— What is that? What's the extra? The regulations. The limitations imposed on the government by the regulations, in particular, Section 200, 340. And we are seeking declaratory and injunctive relief regarding that regulatory authority that is generally and prospectively applicable both to the grantees here, who have a continuing and ongoing relationship with OJP, and to other grantees in the future. And that is— But you said it does something beyond the contracts. And what is the thing that it does beyond the contracts? I just meant that it places a limitation on the government that is, you know, contract law is the floor. And the government has chosen to bound itself in an additional manner by promulgating and then adopting these regulations that bind its behavior in that way. And when it does so, and we bring a challenge, an APA challenge to the— Oh, I see. So your point is that the very fact of the regulations is something over and above what would otherwise be in existence because of the contracts. Correct. Exactly. Precisely. And one final thing. The fact that these funds must be used in accordance with grant terms does not mean that plaintiff's only right to protect them arises out of contract law. And we believe that this is— that the sorts of APA claims that we've made here are of the sort that should be allowed to continue after NIH. No further questions. Thank you, counsel. Thank you to both counsel. We'll take this case.
judges: Srinivasan; Katsas; Rao